**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BOBBY CANNON,**<br>**Plaintiff,**<br><br>**v.**<br><br>**TOWN OF COLLIERVILLE AND MOLLY MEHNER,**<br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.:** |

**COMPLAINT**

1. Plaintiff, Bobby Cannon ["Plaintiff" or "Mr. Cannon"], is a resident of Fayette County, Tennessee.

2. Defendant Town of Collierville ["Collierville" or "the Town"] is a municipality organized under the laws of Tennessee. At all relevant times, the Town employed personnel for its operating departments, including the Collierville Fire Department ["CFD"], and exercised authority over personnel policies and employment decisions.

3. Defendant Molly Mehner ["Mehner"] is, and at all relevant times was, the Town Administrator of the Town of Collierville. Mehner acted under color of state law at all relevant times and is sued as an individual.

4. This action is filed pursuant to 42 U.S.C. § 1983 and Tennessee's Public Employee Political Freedom Act of 1980, Tenn. Code Ann. §§ 8-50-601 to -604. Section 1983 provides a remedy for the deprivation of rights secured by the Constitution and laws of the United States by persons acting under color of state law, and Tenn. Code Ann. § 8-50-602 provides that a public employee may not be prohibited from communicating with an elected public official for any job-

related purpose, and § 8-50-603 prohibits a public employer from disciplining or otherwise discriminating against an employee for exercising that right.

5. This Court has subject-matter jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a) because that claim arises from the same nucleus of operative facts.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Shelby County, Tennessee, where the Town is located.

7. On or about January 18, 2000, Plaintiff was hired by the Town of Collierville into the CFD. Mr. Cannon was hired as a Firefighter/EMT IV and worked his way up the ranks through promotions to Battalion Chief.

8. As Battalion Chief, Plaintiff was responsible for approximately thirty CFD firefighters.

9. Plaintiff was not an operating department head, Department Director, or appointed official whose appointment or termination required action by the Board of Mayor and Aldermen.

10. On or about July 25, 2025, CFD Driver/Paramedic Reece Halyard ["Halyard"] sent an email titled "Notice of Harassment" describing conduct by another CFD employee that caused concerns for his safety, his family's safety, and the safety of other Town employees.

11. Halyard sent the email directly to Town Administrator Molly Mehner and copied then-Fire Chief John Selberg ["Selberg"], Assistant Chief Mark Carter ["Carter"], Plaintiff, Joe Lee Rape ["Rape"], Lieutenant Clay Blair ["Blair"], and Human Resources Director Bill Burke ["Burke"].

12. Halyard expressly requested a meeting with Mehner and requested that his

supervisor and Plaintiff, his Battalion Chief, attend the meeting.

13. The Town's written personnel policy permits an employee who witnesses or experiences harassment to make an oral or written complaint to the employee's immediate supervisor, Department Director, Town Administrator, Human Resources Director, or Mayor, and permits employees to bypass the chain of command in selecting the person to whom they report.

14. The Town's policy designates the Human Resources Director as the investigator for employee-harassment complaints and requires a written investigative record and report to the Town Administrator.

15. The Town's workplace-bullying policy encourages an employee who believes he or she has been victimized by bullying to report the matter to a supervisor, the next higher level of management, or Human Resources.

16. Consistent with Halyard's request and the Town's reporting policies, Plaintiff attended a meeting in early August 2025 with Mehner, Burke, Lieutenant Blair, Halyard, Driver Jeff Segerson ["Segerson"], and Lieutenant Clay McDearman ["McDearman"] to discuss the reported workplace concerns.

17. During that meeting, employees described conduct by a CFD employee that they believed was intimidating and that caused employees to feel unsafe at work and at home.

18. Plaintiff asked whether those present believed Selberg could resolve the issues, and the individuals present stated that they did not believe he could.

19. At the conclusion of the meeting, Plaintiff informed Mehner that the CFD had failed its personnel by not addressing ongoing safety concerns.

20. Plaintiff also expressed disappointment that Selberg attended a chiefs' meeting and took a vacation while the CFD addressed what Plaintiff believed to be a sensitive and serious

personnel matter.

21. Mehner told Plaintiff that she needed to be informed of matters such as the reported issue so that she could work on resolving them.

22. Mehner did not reprimand Plaintiff or advise him that his participation in the meeting violated Town policy, exceeded his role, or undermined the CFD.

23. On or about August 19, 2025, Selberg issued Plaintiff a Statement of Charges accusing him of dereliction of duties and insubordination based on Plaintiff's actions surrounding the August meeting and Plaintiff's criticisms of CFD command staff.

24. Selberg directed Plaintiff to submit a written response to the charges within slightly more than twenty-four hours.

25. Plaintiff submitted a written response to Selberg and Burke on August 20, 2025, explaining his intent, concerns, and account of the allegations against him.

26. Approximately one hour later, Selberg responded that he might have misinterpreted some of Plaintiff's actions or inactions, did not then see a need for a disciplinary hearing, and did not desire to issue discipline at that time.

27. After Plaintiff learned that Selberg had withdrawn the contemplated disciplinary action and canceled the hearing, Plaintiff requested character-reference letters from CFD lieutenants and other fire personnel.

28. On or about August 21, 2025, Plaintiff met with Selberg, who apologized, and Plaintiff told Selberg about concerns regarding Assistant Chief Carter's conduct toward Plaintiff.

29. Plaintiff told Selberg that Carter had allegedly made comments about getting rid of Plaintiff, contacted another chief repeatedly to discuss Plaintiff, and contacted a former CFD employee concerning Plaintiff.

30. Plaintiff reported to Selberg that he felt psychologically bullied and targeted by Carter and that the conduct hindered Plaintiff's ability to perform his job effectively.

31. In September 2025, Plaintiff contacted Mayor Maureen Fraser [“Mayor Fraser”] by text message to ask whether he could deliver something to her.

32. While off duty, Plaintiff met with Mayor Fraser and provided her with duplicate sets of character-reference letters, one set for Mayor Fraser and one set for Mehner.

33. Plaintiff informed Mayor Fraser of his concern that Selberg had made comments about Plaintiff's character to Mehner and Mayor Fraser and that those comments could affect Plaintiff's future promotional opportunities within the CFD.

34. Plaintiff also told Mayor Fraser that Selberg had informed him that Mehner and Mayor Fraser had stated Plaintiff would never be promoted within the CFD.

35. Mayor Fraser told Plaintiff that the statement concerning his prospects for promotion was inaccurate and had not been communicated by her.

36. Mayor Fraser asked Plaintiff how matters were going within the CFD. Plaintiff responded that he was encouraged by his newly collaborative relationship with Selberg and informed Mayor Fraser about his report to Selberg concerning Carter and his surprise that Human Resources had not contacted him.

37. Approximately one week later, Burke contacted Plaintiff concerning Plaintiff's communications with Mayor Fraser and Plaintiff's report concerning Carter.

38. Plaintiff told Burke that he had not submitted a complaint directly to Human Resources but had reported his concerns to Selberg.

39. Plaintiff explained to Burke that his conversation with Mayor Fraser arose after Mayor Fraser inquired about conditions within the CFD.

40. On or about September 26, 2025, Mayor Fraser informed Mehner of her meeting with Plaintiff.

41. On September 29, 2025, Mayor Fraser provided Mehner with her copy of the character-reference letters that Plaintiff had provided.

42. On October 13, 2025, Plaintiff was called to Town Hall for a purported meeting with Mehner concerning Plaintiff's report, where Mehner, Burke, and Selberg were present.

43. At that meeting, Mehner terminated Plaintiff's employment, effective immediately, unless Plaintiff submitted a written resignation by 5:00 p.m. that day.

44. In her written termination communication, Mehner identified the following as grounds for Plaintiff's termination, a true and correct copy of which is attached as Exhibit A:

(a) Plaintiff's solicitation of character-reference letters from subordinates and coworkers while under disciplinary review;

(b) Plaintiff's communications with Mayor Fraser, including his request for a meeting and his delivery of character-reference letters to Mayor Fraser regarding a personnel matter;

(c) Plaintiff's report to Mayor Fraser that Selberg had told him Mehner and Mayor Fraser had stated he would never advance within the CFD;

(d) Plaintiff's statement to Mayor Fraser that he had filed a harassment complaint against Carter with Human Resources and that no action had been taken; and

(e) Plaintiff's explanation to Burke that his contact with Mayor Fraser was a casual encounter.

45. Plaintiff did not submit a written resignation and did not file an internal appeal of his termination.

46. The Town's personnel policies identify termination as a form of discipline and provide that, for a termination recommendation, the supervisor recommending the action must prepare a report stating the violation and basis for the recommendation.

47. The Town's personnel policies further provide that the Town Administrator reviews the disciplinary record and rules on the appropriateness of discipline, and that the Town Administrator's decision is final. Relevant excerpts of the Town's Personnel Policies and Procedures Manual, including the provision vesting the Town Administrator with final authority over discipline, are attached as Exhibit B.

48. Article V, Section 5.02 of the Town Charter assigns the Town Administrator responsibility for administering personnel policies, including the selection and discipline of Town personnel. A copy of Article V, Section 5.02 is attached as Exhibit C.

49. Article V, Section 5.02 separately provides that operating department heads are nominated by the Mayor and appointed or terminated only by a majority vote of the Board of Mayor and Aldermen.

50. Because Plaintiff was not an operating department head or appointed official, his position did not fall within the Charter provision reserving appointment and termination of operating department heads to the Board of Mayor and Aldermen.

51. Under Article V, Section 5.02 of the Town Charter, the Town's personnel policies, and the Town's allocation of authority for Plaintiff's classification, Mehner exercised the Town's final authority over Plaintiff's discipline and termination when she terminated Plaintiff on October 13, 2025.

52. Mehner's termination of Plaintiff constituted an official decision of the Town concerning Plaintiff's employment.

53. Mehner made the decision to terminate Plaintiff herself, and under the Town's personnel policies her decision on discipline was final. No other Town official or body reviewed or approved the decision before it took effect, and no further review was required for it to become final.

54. Plaintiff's communications with Mayor Fraser were a substantial motivating factor in Mehner's decision to terminate Plaintiff's employment.

55. As a direct and proximate result of the termination, Plaintiff has suffered lost wages, lost employment benefits, emotional distress, anxiety, depression, embarrassment, humiliation, damage to reputation, loss of concentration, and loss of sleep.

## COUNT I
## FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983
## TOWN OF COLLIERVILLE AND MOLLY MEHNER

56. Plaintiff incorporates by reference Paragraphs 1 through 55 as if fully set forth herein.

57. Plaintiff communicated with Mayor Fraser, an elected Town official, concerning CFD leadership, workplace safety and personnel concerns, Plaintiff's report concerning Carter, and matters affecting the operation and administration of the CFD.

58. Plaintiff made those communications as a private citizen and not pursuant to his ordinary job duties as Battalion Chief.

59. Plaintiff's communications addressed matters of public concern, including the safety, administration, leadership, and operation of a municipal fire department.

60. Plaintiff's interest in communicating those concerns to an elected Town official outweighed any interest the Town had in restricting the communications.

61. Plaintiff's communications with Mayor Fraser occurred while Plaintiff was off

duty. None of the grounds Mehner identified for terminating Plaintiff asserted that those communications disrupted CFD operations, impaired discipline, or damaged working relationships within the CFD, and the communications did not do so.

62. Mehner terminated Plaintiff because of, and in retaliation for, Plaintiff's protected communications with Mayor Fraser.

63. Plaintiff's termination was an adverse employment action that would deter a person of ordinary firmness from engaging in similar protected speech.

64. Mehner acted under color of state law when she exercised the Town's authority over Plaintiff's employment.

65. As alleged in Paragraphs 48 through 53, Mehner was the Town's final policymaker for personnel decisions involving employees in Plaintiff's classification.

66. Mehner's termination decision constituted official Town policy and was the moving force behind the deprivation of Plaintiff's rights under the First Amendment to the United States Constitution.

67. Plaintiff is entitled to relief under 42 U.S.C. § 1983, including an award of back pay, front pay, lost employment benefits, emotional damages, tax gross up, prejudgment interest, attorney's fees, and expenses. In addition, because Defendant's conduct showed reckless disregard for Plaintiff's federally protected rights, Plaintiff is entitled to an award of punitive damages.

**COUNT II**
**VIOLATION OF TENNESSEE'S PUBLIC EMPLOYEE POLITICAL FREEDOM ACT OF 1980**
**TOWN OF COLLIERVILLE**

68. Plaintiff incorporates by reference Paragraphs 1 through 55 as if fully set forth herein.

69. Plaintiff was a public employee of the Town at all relevant times.

70. Tennessee law provides that a public employee may not be prohibited from communicating with an elected public official for any job-related purpose whatsoever. Tenn. Code Ann. § 8-50-602(a). Tennessee law further prohibits a public employer from disciplining, threatening to discipline, or otherwise discriminating against an employee for exercising that right. Tenn. Code Ann. § 8-50-603(a).

71. Plaintiff communicated with Mayor Fraser, an elected Town official, concerning job-related matters, including CFD workplace safety concerns, department leadership, Plaintiff's report concerning Carter, and Plaintiff's employment-related concerns.

72. The Town terminated Plaintiff because of, and in retaliation for, those communications, in violation of Tenn. Code Ann. § 8-50-603(a).

73. Plaintiff's communications with Mayor Fraser were a substantial motivating factor in the Town's termination decision.

74. Plaintiff is entitled to compensatory damages and reasonable attorney's fees under Tenn. Code Ann. § 8-50-603(b).

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and award the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Back pay, front pay, lost employment benefits, pension benefits, tax gross-up, and loss of earning capacity;

C. Reinstatement to Plaintiff's former position or, if reinstatement is not feasible, appropriate equitable relief in lieu of reinstatement;

D. Rescission of adverse employment actions arising from Plaintiff's termination;

E. Prejudgment interest as allowed by law;

F. Reasonable attorney's fees and costs for Plaintiff's federal civil-rights claim pursuant to 42 U.S.C. § 1988, and for Plaintiff's state-law claim pursuant to Tenn. Code Ann. § 8-50-603(b);

G. Punitive damages pursuant to 42 U.S.C. § 1983; and

H. Such other legal and equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Ralph T. Gibson
Ralph T. Gibson (BPR #14861)
Alexandria R. Powers (BPR #39464)
GIBSON PERRYMAN LAW FIRM
Attorneys for Plaintiff
5100 Poplar Avenue, Suite 2117
Memphis, Tennessee 38137
(901) 526-0412
Ralph@GibsonPerryman.com
Alex@GibsonPerryman.com